Case 2:19-cv-11106-GCS-DRG   ECF No. 58, PageID.364   Filed 09/16/21   Page 1 of 20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE E. HARPER, Jr.,

        Plaintiff,        Civil Action No. 19-11106

v.        Arthur J. Tarnow
        United States District Judge

[UNKNOWN] ARKESTEYN,        David R. Grand
Mental Health Practitioner, *et al.*,        United States Magistrate Judge

        Defendants.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION TO TRANSFER VENUE OR, ALTERNATIVELY, TO SEVER, AND TO DENY DEFENDANT EGBUCHULAM'S MOTION FOR SUMMARY JUDGMENT (ECF Nos. 44, 57)

Plaintiff Willie E. Harper, Jr., ("Harper"), an incarcerated person, brings this action pursuant to 42 U.S.C. § 1983, alleging, principally, that after he began serving a prison sentence, he was improperly classified as a sex offender, in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. The defendants – David Arkesteyn, Adriane Foster, Brenda Stevenson, and Kelechi Egbuchulam (collectively, "Defendants") – are all Michigan Department of Corrections ("MDOC") employees who Harper contends were involved, in one way or another, with his improper classification.

Although this case has already been to the Sixth Circuit and back, presently before the Court are numerous motions related to early-stage pretrial procedure, two of which are the subject of this Report and Recommendation: (1) Defendants' Motion to Transfer

Venue, or, in the Alternative, to Sever; and (2) defendant Egbuchulam's Motion for Summary Judgment. (ECF Nos. 44, 57). An Order of Reference was entered on July 13, 2021, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 49).

Having reviewed the parties' filings, the Court finds that oral argument on these motions is unnecessary. *See* E.D. Mich. L.R. 7.1(f).

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Transfer Venue, or, in the Alternative, to Sever **(ECF No. 44)** be **DENIED**, and that defendant Egbuchulam's Motion for Summary Judgment **(ECF No. 57)** be **DENIED**.

**II.    REPORT**

   **A.    Factual Background**

In early 2018, Harper had been facing charges in Wayne County Circuit Court for First Degree Home Invasion and Criminal Sexual Conduct. In exchange for the dismissal of the CSC charge, Harper agreed to plead guilty to the Home Invasion charge, and to a sentence of 3 to 20 years in prison. On January 29, 2018, such a sentence was imposed against Harper, and he was sent to the MDOC's Charles Egeler Reception & Guidance Center ("RGC") in Jackson, Michigan to be evaluated and "classified."[1] RGC is located within the Eastern District of Michigan. At RGC, defendant Egbuchulam, an MDOC "Classification Director" classified Harper as being a "high assaultive risk" based, in part,

---

[1] This classification process is apparently to determine, among other things, any programming the inmate must complete to be eligible for parole.

upon Egbuchulam's belief that Harper had committed a prior sexual assault. When Harper met with Egbuchulam, Harper objected to being classified based upon a "sexual assault" because he had never been convicted of sexual assault, nor sexually assaulted anyone.

Nevertheless, Egbuchulam maintained the classification and informed Harper in writing, "The Parole and Commutation Board will also be notified of this classification, and although the Parole and Commutation Board looks at many other factors as well as risk in making each decision, it may deny or delay parole." Harper objected in writing and asked for an administrative hearing regarding his classification, but never received one. About two months later, Harper was transferred to the Muskegon Correctional Facility ("MCF"), where the Michigan Sex Offender Program ("MSOP") is conducted. MCF is located within the Western District of Michigan.

Once at MCF, that facility's Classification Director, "Mr. Kitchens," advised Harper that if he wished to further challenge his classification "discrepancy," he should file a grievance against defendants Arkesteyn and Foster, who were the officials responsible for overseeing MCF's MSOP. Harper then took the first step in the MDOC's familiar three-step grievance process, and, on April 13, 2018, filed Grievance MCF 804-387-12C (the "12C Grievance"), stating, in relevant part:

> The discrepancy [] is the MSOP which was not recommended by Jackson nor the Parole Board. I was falsely accused of CSC [criminal sexual conduct] and all the charges were dismissed against me. Mr. Kitchens as well as the PC [said] that Mental Healthcare were responsible for the discrepancy. Yet, Ms. Foster [of Mental Healthcare] says the responsibility lies with the Classification

3

> Director[2] but it clearly states that the Psych department is responsible. Ms. Foster and D. Arkesteyn [sic] are violating my constitutional rights under the 8th and 14th Amendment[s]. . . . Mr. Kitchens, Ms. Foster & D. Arkesteyn [sic] are lying blame on each other when it [is] obvious the psch [sic] department is at fault. All I want is for the [MSOP] program to be taken off.

(ECF No. 44-3, PageID.243).

Harper's 12C Grievance was denied at Step I of the MDOC's grievance process by MDOC respondent Brenda Stevens. (*Id.*, PageID.244). Ms. Stevens noted that the MDOC uses a "Static 99" coding process for classifying prisoners, and that, "The Static 99 applies where there is reason to believe an actual sex offense has occurred with an identifiable victim," and that "the manual states, '[t]he offender need not have been convicted of the offense.'" (*Id.*). Importantly, Stevens noted that the MSOP recommendation based on the Static 99 application was made in "February 2018," which appears to refer to Egbuchulam's classification decision. (*Id.*).

Harper appealed the Step I denial, but that denial was upheld, with the respondent explaining, "Recommendations [for MSOP] are not simply based on offense/convictions/charges, etc." but rather also on "[v]arious factors including: prisoner risk assessment, mental health evaluation, and Parole Board recommendation . . ." (*Id.*, PageID.242). Harper again appealed, with the denial being upheld at Step III on October

---

[2] Harper now contends that this reference to "Classification Director" was to defendant Egbuchulam. (ECF No. 46, PageID.278). While, for the reasons discussed below, the issue is immaterial to the instant motions' determinations, between the assertion in Harper's amended complaint that Kitchens was MCF's "Classification Director" (ECF No. 41, PageID.169) and the remainder of the 12C Grievance, it is unclear whether the referenced "Classification Director" is Kitchens or Egbuchulam.

4

12, 2018.

In the midst of the grievance process, Harper was transferred to Bellamy Creek Correctional Facility, which is located within the Western District of Michigan. Eventually, he was transferred to the Robert G. Cotton Correctional Facility, where he currently resides.

### B. Procedural Background

#### *i.  Initial Complaint*

On April 16, 2019, Harper filed his initial complaint in this action *pro se*, alleging various constitutional claims arising out of his alleged misclassification.[3] The Honorable Arthur J. Tarnow dismissed the case *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. Harper appealed to the United States Court of Appeals for the Sixth Circuit, and on April 28, 2020, that Court upheld the dismissal of many of Harper's claims, but remanded the case as to Harper's Fourteenth Amendment procedural due process claim and his Fifth Amendment self-incrimination claim, explaining:

> Harper also alleged that the stigmatizing consequences of being labeled a sex offender, when coupled with mandated behavioral modification therapy, constituted the kind of deprivation of liberty that requires procedural protections. He further alleged that, despite never having been either convicted of a sex crime or accused of any sexual wrongdoing during his incarceration, the defendants classified him as a sex offender without affording him notice and an opportunity to be heard.
>
> This circuit has not addressed the question of whether a prisoner has a liberty interest in not being classified as a sex offender. But other

---

[3] The Court will refer to this case as Harper's "Classification Case."

5

circuits that have considered the issue have held that prisoners do have such a liberty interest. *See Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010) (holding that prisoners have a liberty interest in not being labeled as a sex offender and forced into treatment, and thus are entitled to adequate process before prison officials take such action); *see also Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (per curiam) (holding that a convicted attempted murderer "retains a 'residuum of liberty' that would be infringed by classification as a sex offender without complying with minimum requirements of due process") (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)); *Neal v. Shimoda*, 131 F.3d 818, 829-30 (9th Cir. 1997). We need not consider the merits of this issue of first impression. At this juncture, the district court is best positioned to consider this issue in the first instance. Still, at the motion to dismiss stage, considering the foregoing authorities, Harper's complaint contains sufficient factual matter to support a plausible claim that his procedural-due-process rights were violated when the defendants classified him as a sex offender.

\* \* \*

Harper further alleged that his sex-offender classification violated his right "against self incrimination because he will be forced to admit pas[t] behavior in sex offense classes" that are administered as part of the Michigan Sex Offender Program. The Fifth Amendment, as applied to the states through the Fourteenth Amendment, also provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. While the "privilege against self-incrimination does not terminate at the jailhouse door . . . [a] broad range of choices that might infringe constitutional rights in a free society fall within the expected conditions of confinement of those who have suffered a lawful conviction." *McKune v. Lile*, 536 U.S. 24, 36 2002) (Kennedy, J., plurality). The right against self-incrimination applies not only in criminal trials, but whenever the state seeks to compel an individual to be a witness against himself and divulge information that might incriminate that person in future criminal proceedings. *See Minnesota v. Murphy*, 465 U.S. 420, 426 (1984).

The Supreme Court outlined the contours of a prisoner's Fifth Amendment right against self-incrimination in *McKune*, which involved a convicted sex offender's challenge to Kansas's compulsory sex-offender program that required him to admit his crime of incarceration, as well as any other past sex crimes. *McKune*, 536 U.S. at 29. The four-justice plurality stated that "[a] prison clinical

6

> rehabilitation program . . . does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life." *Id*. at 37-38. The Court rejected McKune's Fifth Amendment claim because his decision not to participate in Kansas's compulsory sex-offender program would neither extend his term of incarceration nor affect his eligibility for good-time credits or parole, but would merely result in him being transferred "to a less desirable maximum-security unit." *Id*. at 38.
>
> Here, however, Harper alleged that he will be ineligible for parole if he refuses to participate in the Michigan Sex Offender Program. Accepting this allegation as true, as we must at the dismissal stage, *see Doe*, 882 F.3d at 588, such an adverse consequence is precisely the kind that the *McKune* plurality thought would implicate the Fifth Amendment's protections against self-incrimination. *See McKune*, 536 U.S. at 38. Harper's complaint therefore contains sufficient factual matter to support a plausible claim that his Fifth Amendment right against self-incrimination would be violated because he would lose his parole eligibility by refusing to participate in the Michigan Sex Offender Program.

(ECF No. 14).

### ii. *New Case and Motions to Consolidate*

Just a few days after the Sixth Circuit issued its ruling, on May 1, 2020, Harper filed a new civil action in the Eastern District of Michigan, Case No. 20-11377. In that new case, which is also assigned to Judge Tarnow and the undersigned, Harper names as defendants various Michigan Parole Board members, alleging, among other claims, that they violated his procedural due process rights by not "remov[ing] the sex offender designation label from [his] institutional file (and consequently, the requirement that he complete MSOP)," and asks the Court to enter an injunction ordering the Michigan Parole

7

Board to remove that designation.[4]

On February 22, 2021, in both the Classification Case and the Parole Board Case, Harper filed motions to consolidate, arguing that both cases should be consolidated into one. For reasons explained in a separate Order this Court is issuing today, consolidation is appropriate.

### iii. Amended Complaint

On March 29, 2021, Harper, now represented by counsel, filed an amended complaint in the Classification Case. (ECF No. 41). Harper named Arkesteyn, Foster, Stevenson, and Egbuchulam as defendants, and asserted two claims: Count I – Violations of Due Process under the Fourteenth Amendment; and Count II – Violations Against Compelled Self-Incrimination. (ECF No. 41). Harper asserted that, pursuant to 28 U.S.C. §1391(b), venue is proper in the Eastern District of Michigan because, "[t]he events giving rise to the constitutional violations set forth in [the amended complaint] began at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Michigan [] [and] Defendant Kelechi Egbuchulam works at RGC and [] resides in the Eastern District of Michigan." The City of Jackson is within the Eastern District of Michigan.

### iv. Defendants' Instant Motions

Pending before the Court are two inter-related motions: (1) a "Motion to Transfer Venue or, Alternatively, to Sever" that defendants Arkesteyn, Foster, and Stevenson[5] filed

---

[4] The Court will refer to this case as Harper's "Parole Board Case."

[5] Egbuchulam was not a party to this motion as he had not yet been served with process when it was filed.

on April 19, 2021 (the "Venue/Sever Motion") (ECF No. 44); and (2) Egbuchulam's Motion for Summary Judgment based on exhaustion that he filed on August 31, 2021 (the "Exhaustion Motion") (ECF No. 57).

### a. *Venue/Sever Motion*

In their Venue/Sever Motion, the moving defendants argue that they "all work out of the Muskegon Correctional Facility (MCF) in Muskegon, Michigan" which is in the Western District of Michigan, and that "[t]he incidents giving rise to the claims against [them] in the Amended Complaint allegedly occurred at MRF [sic], which is in Muskegon County" in "the Western District of Michigan." (ECF No. 44, PageID.193-94). They also allege that they "all reside in counties in the Western District of Michigan." (*Id.*). These defendants recognize, however, that "[t]he incidents giving rise to the claims against Egbuchulam in the Amended Complaint allegedly occurred at RGC, which is in Jackson County in "the Eastern District of Michigan." (*Id.*, PageID.194).

The moving defendants argue that Harper failed to properly exhaust his administrative remedies against *Egbuchulam* through the MDOC's familiar three-step grievance process. They assert that "[a] prisoner's Step III Grievance Report tracks all of the grievances that had been filed at Step III," and that "Harper's Step III Grievance Report [attached as an exhibit to their motion] shows that he did not pursue any grievances relating to his claims against Egbuchulam." (*Id.*, PageID.204; *see also id.*, PageID.211; ECF No. 44-3).

The moving defendants argue that because they all reside in the Western District of Michigan and their allegedly unlawful conduct all occurred in that district, and with

9

Harper's claims against Egbuchulam out of the case, venue is improper in the Eastern District of Michigan. (*Id.*, PageID.212-13). Citing to 28 U.S.C. § 1406(a), which provides, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought," the moving defendants ask the Court to either dismiss the claims against them or transfer the case to the Western District of Michigan. (*Id.*, PageID.213-14).

Harper filed his response to the Venue/Sever Motion on May 3, 2021. (ECF No. 46). Harper argues that he properly exhausted the 12C Grievance against Egbuchulam either because he referred to Egbuchulam by job title – "Classification Director" – in that Grievance, or because the "failure to name [a particular individual] can be excused if it is obvious from the facts alleged in the grievance that [that individual was] involved and the prison had the opportunity to address the claims." (*Id.*, PageID.281-82).[6] The moving defendants did not file a reply brief.

### b. Egbuchulam's Motion for Summary Judgment

On August 31, 2021, Egbuchulam filed a motion for summary judgment ("Summary Judgment Motion"). (ECF No. 57). However, Egbuchulam's motion simply referred the Court to the exhaustion arguments made in his co-defendants' Venue/Sever Motion, and did not even attempt to address the arguments Harper made in his response to that motion.

For the reasons discussed below, the Court finds that the exhaustion argument lacks

---

[6] Harper also argues that the moving defendants lack standing to assert the exhaustion defense on Egbuchulam's behalf. For reasons discussed below, the Court need not consider this argument.

10

merit, and that venue is proper in this district. Accordingly, both the Venue/Sever Motion and Egbuchulam's Summary Judgment Motion should be denied.

### C. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact

11

will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

28 U.S.C. § 1391(b) provides:

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

**D.     Analysis**

### *i.     Exhaustion*

The Court first addresses Defendants' argument that Harper failed to properly exhaust any claims against Egbuchulam prior to filing this lawsuit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

***The PLRA's Exhaustion Requirement***

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced,

and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being hauled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 44-2). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ B). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.* at ¶ Q). In a Step I grievance, a prisoner must include a description of the issues "stated briefly but concisely" along with the "[d]ates, times, places, and names of all those involved in the issue being grieved." (*Id.*, at ¶ R). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days

13

after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ BB). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ FF). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.

Grievances may be rejected for myriad reasons, including if "the grievance is filed in an untimely manner" or if "the prisoner is grieving <u>content</u> of policy or procedure." (*Id.* at ¶¶ F, G). Additionally, "if the grievance is rejected, the grievance response shall state the reason for rejection without addressing the merits of the grievance." (*Id.* at ¶ X).

### *Harper Did Not Fail to Exhaust His Claims Against Egbuchulam*

The Defendants argue that Harper failed to properly exhaust his administrative remedies against Egbuchulam. In support of that argument, they attached Harper's Step III Grievance Report which purportedly "shows that [he] did not pursue any grievances relating to his claims against Egbuchulam." (ECF No. 44, PageID.211; ECF No. 44-3). Defendants thus curtly conclude that "Harper did not pursue any grievances against Egbuchulam and therefore failed to exhaust any claims against Egbuchulam prior to filing this lawsuit." (*Id.*, PageID.211). This argument lacks merit in multiple respects.

First, although Defendants assert that "[a] prisoner's Step III Grievance Report tracks *all* of the grievances that had been filed at Step III," the Step III Grievance Report they provide for Harper does not reference the 12C Grievance. (ECF No. 44-3) (emphasis added). This is so even though Harper clearly took the 12C Grievance all the way through the three-step process, and the 12C Grievance paperwork is attached to Harper's Step III

14

Grievance Report. (ECF No. 44-3). Because the Step III Grievance Report references a grievance with a different identifier (MCF-18-04-0387-28e) but the exact same dates as Harper's 12C Grievance (*id.*), the issue may simply be the result of misnumbering. Even so, it at least raises questions about the Step III Grievance Report's overall accuracy.

Second, Defendants' argument improperly assumes that Harper's failure to identify Egbuchulam by name means Harper could not have properly exhausted any claims against him. "The purpose of a grievance is to give prison officials fair notice of **the conduct** that underlies the Plaintiff's legal claim," *Salami v. Trumbley*, No. 19-11558, 2020 WL 6389839, at *3 (E.D. Mich. Sept. 4, 2020) (emphasis added), "not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.'" *Jones*, 549 U.S. at 219 (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). *See also Sedore v. Campbell*, No. 19-10311, 2021 WL 405987 (E.D. Mich. Feb. 5, 2021) ("[F]ailure to name an individual later sued is not necessarily fatal to a prisoner's suit so long as prison officials had fair notice of the claim raised against the defendants such that there is an opportunity to resolve it."); *Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *6-7 (E.D. Mich. July 31, 2018), *report and recommendation adopted*, 2018 WL 4501480 (E.D. Mich. Sept. 20, 2018) ("Since the Supreme Court decided *Jones v. Bock*, the Sixth Circuit has stated that courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules."); *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) ("We have ... explained that the purpose of the PLRA's exhaustion requirement 'is to allow prison officials a fair opportunity to address grievances on the

merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court.'") (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)).

While it is undisputed that defendant Egbuchulam's name does not appear in the 12C Grievance, the 12C Grievance made crystal clear to the respondent – the one charged with investigating Harper's complaint – that Harper's beef was with whoever was responsible for classifying him as a sex offender. *See supra* at 3-4. Harper explained that he believed defendants Foster and Arkesteyn were responsible, whereas they blamed the "Classification Director." Whether the "Classification Director" in that sentence refers to Egbuchulam is at least a question of fact, *see supra* at 4 n.2. But even if it referred to someone else, Harper's 12C Grievance still satisfied the purpose of the grievance process – "to give prison officials fair notice ***of the conduct*** that underlies [his] legal claim;" the allegedly improper classification of him as a sex offender. *Salami*, 2020 WL 6389839, at *3 (emphasis added).

Moreover, Harper persuasively argues that the persons who investigated the 12C Grievance specifically looked to *Egbuchulam's* handling of the matter to determine that Harper had been properly classified. (ECF No. 44-3, PageID.244 (Stevens noting that the MSOP recommendation based on the Static 99 application was made in "February 2018," which appears to refer to Egbuchulam's classification decision); ECF No. 46, PageID.278, 281 ("The MDOC found that [Harper's] classification was correct based upon the Static-99 form (which was formulated and used by Egbuchulam) . . . The grievance 'investigation information' section reveals that the 'Static-99 form' that was completed and used by

16

Defendant Egbuchulam was at the epicenter of Plaintiff's complaint. . . . Egbuchulam's 'Static-99 form' was again reiterated during the Step II process.").[7]

In short, the grievance process played out exactly as it was intended, even with respect to Egbuchulam, and the Defendants' argument that Harper failed to exhaust his administrative remedies as to Egbuchulam lacks merit. In light of the foregoing, Egbuchulam's motion for summary judgment lacks merit and should be denied.

### ii. Venue/Sever

That brings the Court to the other defendants' Venue/Sever Motion in which they first argue, "[i]f the Court agrees with MDOC Defendants that Egbuchulam is subject to dismissal on grounds of exhaustion, venue would be improper in the Eastern District of Michigan, and the matter should be dismissed to allow [Harper] to re-file in the Western District of Michigan or be transferred to the Western District." (ECF No. 44, PageID.194-95). In light of the above analysis on the exhaustion issue, this argument lacks merit and should be denied.

Recognizing that with Egbuchlam in the case, 28 U.S.C. § 1391(b)'s requirements for venue in the Eastern District are satisfied[8], the other defendants argue, "[i]f the Court decides that Egbuchulam is *not subject* to dismissal on grounds of exhaustion, the Court should sever the claims against [them] as being improperly joined under Fed. R. Civ. P.

---

[7] The Court notes that despite Harper raising many of these issues in his response to the Sever/Transfer Motion, the moving defendants did not file a reply brief. Moreover, when Egbuchulam filed his summary judgment motion based on exhaustion, he simply referred to the other defendants' exhaustion argument and also did not address Harper's arguments.

[8] For example, subsection (b)(1) is satisfied because Egbuchulam resides in the Eastern District of Michigan and all other defendants reside in Michigan.

20(a)(2) and dismiss them from this lawsuit." (*Id.*, PageID.195) (emphasis in original). This argument lacks merit.

Fed. R. Civ. P. 20(a)(2) provides that defendants "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Here, a review of Harper's operative complaint makes clear that these requirements are satisfied and that all defendants are properly joined in this action. Harper alleges that defendant Egbuchulam improperly and wrongfully classified him as a sex offender without providing him a pre- or post-deprivation hearing, and that defendants Arkesteyn, Foster, and Stevenson relied on that classification and maintained it, and to facilitate Harper's placement in a sex offender therapy program. (ECF No. 41, PageID.167-70).

The moving defendants point the Court to a few Eastern District of Michigan and Western District of Michigan cases that they claim support their request for severing them from this case. (ECF No. 44, PageID.215). However, they make no meaningful attempt to explain *why* the Court should follow these cases here. For example, they first cite to *Prince v. Elum*, Case No. 12-cv15526 (E.D. Mich. Jan. 14, 2013) (ECF No. 44-4), but state only that the Honorable Gerald E. Rosen dismissed some claims without prejudice because "the plaintiff brought unrelated claims [against] [sic] numerous defendants." The moving defendants also cited *Fields v. Martin*, Case No. 13-cv-10166 (E.D. Mich. Sept. 13, 2013) (ECF No. 44-5), but state only the Honorable George Caram Steeh's conclusion "that the

18

claims were misjoined" and should be severed.  In his response brief, Harper persuasively explains why these cases are materially distinguishable from his.  For example, Harper notes that *Prince* involved an inmate who filed "a nine-count complaint alleging various claims against 18 named defendants" on a whole panoply of issues, and that Judge Rosen therefore found that "joinder of the multiple defendants in this one civil rights action is unmanageable and inappropriate." (ECF No. 46, PageID.288-89).  Similarly, Harper notes that *Fields* involved an "eight-count Complaint against sixteen employees" of the MDOC." (*Id.*, PageID.289).

Again, the situation here is entirely different as there are only a few narrow questions to be resolved in this case; namely, whether Harper was properly classified as a sex offender, and if not, whether any of the Defendants' actions in persisting with that classification as it related to their specific functions within the MDOC violated his constitutional rights.  While this case may involve interesting and somewhat novel legal issues, having the action proceed with the two narrow claims against the four named defendants can hardly be characterized as "unmanageable" or "inappropriate."  On the contrary, joinder of these claims and defendants will further judicial economy. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  Accordingly, to the extent the defendants other than Egbuchulam ask the Court to sever Harper's claims against them, that request should be denied.

### III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Transfer Venue, or, in the Alternative, to Sever **(ECF No. 44)** be **DENIED**, and that

defendant Egbuchulam's Motion for Summary Judgment **(ECF No. 57)** be **DENIED**.

Dated: September 16, 2021  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

## **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 16, 2021.

  s/Eddrey O. Butts
  EDDREY O. BUTTS
  Case Manager