## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

WILLIE HARPER, JR. #932428,

     Plaintiff,                 No. 2:19-cv-11106-AJT-DRG

v                            HON. ARTHUR J. TARNOW
                            MAG. JUDGE DAVID R. GRAND

DAVID ARKESTEYN, ADRIANE
FOSTER, BRENDA STEVENSON,
KELECHI EGBUCHULAM, BRIAN
SHIPMAN, MELISSA JENNINGS,
JEROME WARFIELD, ANTHONY
KING AND SUE BROWN−WARD.

     Defendants.

_____/

| | |
|---|---|
| Frank J. Lawrence (DC# 1048420) | Scott R. Rothermel (P70711) |
| Attorney for Plaintiff Harper #932428 | Assistant Attorney General |
| 941 Westview Road | Attorney for Defendants |
| Bloomfield Hills, MI  48304 | Mich. Dep't of Attorney General |
| (248) 722-2560 | MDOC Division |
| flawrence1@hotmail.com | P.O. Box 30217 |
| | Lansing, MI 48909 |
| | (517) 335-3055 |
| | rothermels@michigan.gov |

_____/

## PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT

### JURISDICTION

1.    Plaintiff seeks to vindicate rights protected by the Fifth and Fourteenth

Amendments to the Constitution of the United States and by 42 U.S.C. §1983.

This court has jurisdiction over this civil action pursuant to 28 U.S.C. §1331 and

§1343(a) (3) and (4). Plaintiff seeks declaratory relief pursuant to §2201 and §2202.

## VENUE

2.     The events giving rise to the constitutional violations set forth in this action began at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Michigan.  Defendant Kelechi Egbuchulam works at RGC and, upon information and belief, he resides in the Eastern District of Michigan.  Pursuant to 28 U.S.C. §1391(b), venue is proper in the United States District Court for the Eastern District of Michigan.

## PARTIES

3.     Plaintiff Willie Harper is an inmate confined within a state correctional facility under the jurisdiction of the Michigan Department of Corrections.

4.     Defendant David Arkesteyn is a mental health practitioner of the Michigan Department of Corrections.  At all times relevant to the events in this action, Defendant Arkesteyn was acting under color of state law.  Defendant is sued individually and for prospective equitable relief in his official capacity as the Department's Community Health Services Manager.

5.     Defendant Adriane Foster is a mental health practitioner of the Michigan Department of Corrections.  At all times relevant to the events in this action, Defendant Foster was acting under color of state law.  Defendant is sued

2

individually and for prospective equitable relief in her official capacity as a Department Unit Psychologist.

6.      Defendant Brenda Stevenson is a mental health practitioner of the Michigan Department of Corrections.  At all times relevant to the events in this action, Defendant Stevenson was acting under color of state law.  Defendant is sued for prospective equitable relief in her official capacity as Department Unit Chief Psychologist.

7.      Defendant Kelechi Egbuchulam is a Classification Director of the Michigan Department of Corrections.  At all times relevant to the events in this action, Defendant Egbuchulam was acting under color of state law.  Defendant is sued individually and for prospective equitable relief in his official capacity as a member of the Department's Classification Committee.

8.      Defendant Brian Shipman is the Chairman of the Michigan Parole Board. Defendants Jennings, Warfield and King are associate members of the Michigan Parole Board.  At all times relevant to the events in this action, Defendants Shipman, Jennings, Warfield and King have acted under color of state law. Defendants Shipman, Jennings, Warfield and King are sued for prospective equitable relief in their official capacities as Parole Board members.

9.      Defendant Sue Brown-Ward is an analyst of the Michigan Parole Board.  At all times relevant to the events in this action, Defendant Brown-Ward was acting

under color of state law.   Defendant Brown-Ward is sued in her individual capacity.

COMMON FACTS

10.    In early 2018, Harper had been facing charges in Michigan's Wayne County Circuit Court for First Degree Home Invasion and Criminal Sexual Conduct.   In exchange for the dismissal of the CSC charge, Harper agreed to plead guilty to the Home Invasion charge, and to a sentence of 3 to 20 years in prison.   On January 29, 2018, such a sentence was imposed against Harper, and he was sent to the Charles Egeler Reception & Guidance Center ("RGC") in Jackson, Michigan.

11.    Upon Plaintiff's report to RGC, he was scheduled to be evaluated and classified.

12.    During Plaintiff's stay at RGC, he met with Defendant Egbuchulam, who represented himself to be a "Classification Director."   On or about February 15, 2018, Defendant Egbuchulam classified Plaintiff as being a "high assaultive risk" based, in part, upon Plaintiff allegedly having committed a prior sexual assault.

13.    Upon meeting with Defendant Egbuchulam, Plaintiff verbally objected to being classified based upon a "sexual assault" that never occurred.   Plaintiff has neither been convicted of nor has he ever engaged in any sexual assault in his entire life.

14.    Defendant Egbuchulam responded to Plaintiff that his crime for which he was convicted fits the description of a sexual assault. Defendant Egbuchulam informed Plaintiff in writing that "The Parole and Commutation Board will also be notified of this classification, and although the Parole and Commutation Board looks at many other factors as well as risk in making each decision, it may deny or delay parole."

15.    On or about February 16, 2018, Plaintiff objected in writing by requesting a formal administrative hearing to challenge Defendant Egbuchulam's wrongful classification. That formal administrative hearing never occurred.

16.    During a prisoner's stay at RGC, it is prison policy that the inmate will meet with a member of the Michigan Parole Board for an "initial interview." During that "initial interview" the Parole Board member asks the inmate about his conviction(s) and the Parole Board member will issue a "recommendation" as to what classes or therapy that inmate should take in order to be eligible for parole.

17.    The term "recommendation" is employed by state officials in order to misleadingly suggest that an inmate is free to reject recommended classes or therapy. However, in practice, these "recommendations" are mandatory because the failure to follow them renders the inmates ineligible for parole; the "recommended" therapy is far from voluntary.

18.    Approximately two months after Plaintiff met with Defendant Egbuchulam, he was transferred to the Muskegon Correctional Facility (MCF), where the Michigan Sex Offender Program (MSOP) is conducted.

19.    Plaintiff met with the Classification Director of MCF, Mr. Kitchens, who advised Plaintiff that a reclassification could not occur because Defendant Egbuchulam had already made the classification.  Mr. Kitchens advised Plaintiff to file a kite (i.e., a grievance) concerning the two individuals at MCF who were responsible for implementing Egbuchulam's classification decision and overseeing Plaintiff's placement in the MSOP, Defendants Arkesteyn and Foster.

20.    Prior to Plaintiff's discussion with Mr. Kitchens, Plaintiff had never met or communicated with Defendants Arkesteyn and Foster.  Although Plaintiff has neither been convicted of a sex crime nor accused of any sexual wrongdoing while incarcerated, Defendants Arkesteyn and Foster wrongfully facilitated Plaintiff's placement in the MSOP.

21.    Plaintiff filed a grievance concerning Defendants Arkesteyn's and Foster's efforts to place him in the MSOP.  Plaintiff suffered stigmatizing consequences of being transferred to another prison as a sex offender for involuntary sex offender therapy, coupled with the subjection to mandatory behavior modification as a treatment for sexual deviancy.

22.    In March of 2018, Plaintiff met with Defendant Foster in an effort to challenge her and Defendant Arkesteyn's decision to facilitate Plaintiff's placement in the MSOP.  Defendant Foster told Plaintiff that she and Defendant Arkesteyn correctly classified him as a sex offender for the purposes of needing to participate in the MSOP.  Defendant Foster reiterated that her and Defendant Arkesteyn's decisions were based upon Egbuchulam's prior assessment and a presentence report contained in Plaintiff's prison file.  Defendant Foster articulated her and Defendant Arkesteyn's "recommendations" that Plaintiff's partake in sex offender therapy programming.  Defendant Foster reaffirmed that the Parole Board would be made aware of her and Defendant Arkesteyn's assessments.

23.    As a result of Plaintiff's grievance against Defendants Arkesteyn and Foster, on or about April 28, 2018, Plaintiff met with Defendant Unit Chief Psychologist Stevenson.  Defendant Stevenson affirmed Plaintiff's classification based, in part, on an alleged sex offense that never occurred.  According to Defendant Stevenson, Plaintiff was properly designated as a sex offender based upon language contained in Plaintiff's pre-sentence report and a Static-99 form utilized by Defendants Egbuchulam, Arkesteyn and Foster.

24.    Defendant Stevenson denied Plaintiff's grievance against Defendants Arkesteyn and Foster at the Step I level of the administrative process. Plaintiff's

appeal of Defendant Stevenson's denial of his grievance was likewise denied at Steps II and III.

25.    MSOP therapy is not within Plaintiff's imposed sentence.    Compelled treatment for sex offender therapy transforms the sentence and crime that served the basis for Plaintiff's confinement within the Michigan Department of Corrections.

26.    Plaintiff repeatedly voiced his objections to being labeled as a sex offender and his placement in the MSOP.    Plaintiff filed another grievance, again complaining about these issues.  Shortly after Plaintiff filed that grievance, on June 5, 2018 he was transferred to the Bellamy Creek Correctional Facility (IBC).

27.    After being transferred to IBC, Plaintiff was eventually placed within Unit 6 or 7, a location specially designated for sex offenders.  Plaintiff objected to his classification to his Resident Unit Manager, Mrs. Thompson.  Mrs. Thompson said that the pre-sentence report controlled the situation and as for any legal challenges by Plaintiff to the classification, Mrs. Thompson said "good luck with that."

28.    Plaintiff was again placed in a sex offender program, including a program that required 25 sessions.  Plaintiff refused to participate in the program, repeatedly voicing his objections to his wrongful classification.  Nevertheless, Plaintiff was still required to reside in a unit for sex offenders despite the fact that he refused to participate in any sex offender therapy sessions.

29.    Plaintiff was required to reside at IBC in a sex offender unit for approximately a year, wherein he repeatedly objected to his classification and the requirement that he reside with violent sex offenders.

30.    After transferring out of IBC, Plaintiff was transferred to the St. Louis Correctional Facility (SLF), which also provides sex offense therapy to inmates pursuant to the MSOP.   Plaintiff repeatedly refused to participate in any sex offender therapy sessions during his stay at SLF.

31.    Plaintiff's stay at SLF lasted about a month.   Plaintiff was transferred to the G. Robert Cotton Correctional Facility (JCF), where he currently resides and he refuses to participate in any sex offender therapy.

32.    As a consequence of being labeled as a sex offender, Plaintiff is ineligible for minimum custody classification.  Inmates in minimum custody are eligible for certain work release programs and community custody programs.

33.     An inmate is eligible for parole when the inmate has served a period of time equal to the minimum sentence imposed by the court for the crime of which he was convicted, less good time and disciplinary credits. MCL 791.234.   Plaintiff has already served his minimum sentence.

34.    Plaintiff's classification and his refusal to participate in sex offender programs or sex assault therapy programs was used by the Michigan Parole Board

as a basis to deny parole on two occasions, the first being on or about February 3, 2020.

35.   Defendant Brown-Ward, in her capacity as a Parole Board analyst, provided clerical and analytical support to the Board's members who presided over Plaintiff's two unsuccessful parole proceedings.  Defendant Brown-Ward reported to the Parole Board members that Plaintiff had a prior sex offense, which was untrue, and that he refused "recommended" sex offender therapy programming.

36.   Prior to the Parole Board's (first) adverse decision in 2020, Defendant Brown-Ward relied upon an alleged sex assault by Plaintiff (that never occurred) to compute a mental health score of -5 and she prepared a "Parole Board Guideline Scoresheet" reflecting the -5 score.  The Parole Board relied upon Defendant Brown-Ward's erroneous computations in evaluating Plaintiff's eligibility for parole.

37.   With regard to Plaintiff's first Parole Board denial in 2020, he contacted the Parole Board in writing to object to his "sex assault" classification by Defendants Egbuchulam, Arkesteyn and Foster, who supplied the initial determinations that led to the -5 mental health score utilized by Defendant Brown-Ward.  On March 11, 2020, Defendant Brown-Ward issued the following written response:

> You received the -5 mental health score based upon your present conviction.  A history of, OR, currently serving on, a CSC conviction for [sic] sexually related crime is included in the PG scoring process for mental health points.  Your crime description clearly notes a

10

sexual assault on your victim.  A sexual assault is included on the PG scoring process for mental health points.

I would like to encourage you to continue in any and all programming available to you [sic] are your current site.

38.    After being denied Parole in 2020, Plaintiff again refused to participate in the MSOP.  Plaintiff was denied parole for a second time on February 23, 2021, which followed an interview with Parole Board member Anthony King, who expressed doubts to Plaintiff about his fitness for release without participating in sex offender therapy programming.  This was because the Parole Board employs an unwritten policy of denying parole to inmates who refuse to take "recommended" sex offender therapy classes.

## CONSTITUTIONAL CLAIMS

### COUNT I
### VIOLATIONS OF DUE PROCESS OF LAW (PROCEDURAL AND SUBSTANTIVE) UNDER THE FOURTEENTH AMENDMENT
### and 42 USC §1983

39.    Plaintiff hereby restates and incorporates the paragraphs above.

40.    The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  Plaintiff's procedural-due-process rights were violated when Defendants classified him as a sex offender.  An inmate who has not

been convicted of a sex offense has a liberty interest in not being branded a sex offender.

41.    An inmate who has never been convicted of a sex offense is entitled to due process before a state classifies him as a sex offender.  Defendants failed to provide Plaintiff notice or an opportunity to be heard prior to classifying him as a sex offender and transferring him.  This resulted in an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life.

42.    The stigmatizing consequences of a transfer to a prison facility for involuntary sex offender treatment, coupled with the subjection of a prisoner to mandatory behavior modification as a treatment for a sex crime that he did not commit, constitutes the kind of deprivations of liberty that are protected by the due process clause.  However, Plaintiff received no due process.

43.  Plaintiff's prison transfers and the stigmatizing consequences of being labeled a sex offender, when coupled with mandated behavioral modification therapy, constituted the kind of deprivation of liberty that requires procedural protections. Despite never having been either convicted of a sex crime or accused of any sexual wrongdoing during his incarceration, Defendant wrongfully classified Plaintiff as a sex offender without affording him notice and an opportunity to be heard.

44.    Labeling a prisoner a sex offender and forcing him to submit to intensive therapy triggers a liberty interest for purposes of due process.  The Due Process

12

Clause gives rise to an independent liberty interest in not being labeled a sex offender and an inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender.  Defendants have violated that right.

45.    Involuntary confinement to a specialized sex offender unit within a prison facility is not within the range of conditions of confinement to which a prison sentence subjects an individual.  Confinement to such a specialized unit involves more than merely a loss of freedom; it also has a stigmatizing effect on the prison inmate.

46.    The stigmatizing consequences of being labeled a sex offender, when coupled with mandated behavioral-modification therapy for parole eligibility, constitute a deprivation of liberty that requires procedural protections.  Despite never having been either convicted of a sex crime or accused of any sexual wrongdoing during his incarceration, Defendants classified Plaintiff as a sex offender without affording him notice and an opportunity to be heard.

47.    There is no difference for stigmatization purposes between being labeled a sex offender and being labeled a possible sex offender.

48.    The extreme hardship and indeterminate length of confinement in a unit specifically reserved for sex offenders establishes a dramatic departure from the basic conditions of Plaintiff's sentence. Requiring Plaintiff to reside in a unit

specifically reserved for sex offenders constituted a high degree of departure from the baseline.

49.   Sex offender treatment programs are compulsory when the receipt of benefits, such as parole, is conditioned on participation in treatment.  Plaintiff's refusal to participate in sex offender therapy programming has nullified his eligibility for parole.

50.   Notwithstanding any claim of Defendants that participation in sex offender treatment is "voluntary," significant negative consequences flow from Plaintiff's refusal to participate in a "recommended" sex offender treatment program where, in practice, sex offender treatment is a condition of parole eligibility.

51.   The Michigan Parole Board has used Plaintiff's classification and his refusal to participate in sex offender therapy or modification classes as a basis for not releasing Plaintiff on parole, which violates Plaintiff's right to due process of law.

52.   A prisoner has a liberty interest in not being classified as a sex offender when he has never been either convicted of a sex crime or accused of any sexual wrongdoing during his incarceration.   Defendants' actions are uniquely stigmatizing, resulting in unique challenges in prison.

53.   Additionally, Defendants have classified Plaintiff as a sex offender and subjected him to the MSOP without a rational basis, thus violating Plaintiff's rights to substantive due process of law.   Defendants' actions are arbitrary and

capricious; Defendants have acted without a rational basis and without consideration of the facts or circumstances of Plaintiff's case.

54. To be clear, Plaintiff is neither alleging in this action that he has a fundamental right to parole nor is he using this federal action to overturn his prior parole denials. Rather, Plaintiff seeks prospective equitable relief to enjoin the Parole Board Defendants from using his unlawful sex offender classification and his related refusals to participate in sex offender therapy as a basis for future parole denials.

55. By reason of the aforementioned acts, Plaintiff was injured in his health, strength and activity, sustained great mental pain, suffering and shock to his nervous system, torment, anxiety, anguish, humiliation, and severe emotional distress, all to his damage in an amount according to proof at trial.

56. Defendants Egbuchulam's, Arkesteyn's, Foster's and Brown-Ward's acts were done and committed knowingly, deliberately and maliciously, with the intent to oppress, injure and harass Plaintiff, and with reckless indifference to the civil rights of Plaintiff; and by reason thereof, Plaintiff prays for punitive and exemplary damages from and against these Defendants in an amount according to proof at trial.

## COUNT II
## VIOLATIONS AGAINST COMPELLED SELF INCRIMINATION
## UNDER THE FIFTH AMENDMENT AND 42 USC §1983

57.    Plaintiff hereby restates and incorporates the paragraphs above.

58.    The Double Jeopardy Clause of the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.   The right against self incrimination applies not only in criminal trials, but whenever the state seeks to compel an individual to be a witness against himself and divulge information that might incriminate that person in future criminal proceedings.

59.    Defendants' classification of Plaintiff violates his right against self incrimination because Plaintiff will be forced to admit past behavior in sex offense therapy classes when, in fact, that "behavior" never took place.

60.    An inmate classified as a sex offender loses his parole eligibility by refusing to participate in the MSOP.

61.    A condition of the MSOP is that participants admit to their past, sexually deviant behavior.   Here, Plaintiff has no past, sexually deviant behavior in which he has engaged.

62.    Defendant's MSOP violates Plaintiff's privilege against self-incrimination because the adverse consequences Plaintiff faced for not participating constitute atypical and significant hardships in relation to the ordinary incidents of prison life; Plaintiff's refusal to participate in the MSOP have adversely affected his eligibility for parole.

16

63.     By reason of the aforementioned acts, Plaintiff was injured in his health, strength and activity, sustained great mental pain, suffering and shock to his nervous system, torment, anxiety, anguish, humiliation, and severe emotional distress, all to his damage in an amount according to proof at trial.

64.     Defendants Egbuchulam's, Arkesteyn's, Foster's and Brown-Ward's acts were done and committed knowingly, deliberately and maliciously, with the intent to oppress, injure and harass Plaintiff, and with reckless indifference to the civil rights of Plaintiff; and by reason thereof, Plaintiff prays for punitive and exemplary damages from and against Defendants in an amount according to proof at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that the Court will:

a.      Issue a declaratory judgment for prospective equitable relief that the actions and practices described above constitute an ongoing violation of federal law that cause the deprivation of rights guaranteed to the Plaintiff by the Fifth and Fourteenth Amendments to the United States Constitution, as enforceable by 42 U.S.C. §1983;

b.      Issue a declaratory judgment that Defendants have violated Plaintiff's rights to procedural due process of law and substantive due process of law;

17

c.     Issue a declaratory judgment that Defendants' policy of classifying inmates who have never been convicted of a sex crime as sex offenders and/or placing them within the MSOP without adequate procedural protections violates the Fourteenth Amendment and 42 U.S.C. §1983 and enjoin them from engaging in this conduct in the future;

d.     Declare that an inmate who has never been convicted of a sex crime and who Defendants intend to classify as a sex offender (or intend on placing him in a sex offender treatment program) is entitled to a hearing at which he must be afforded adequate procedural protections.   In this respect, Plaintiff requests injunctive relief ordering Defendants to provide inmates with the following:

(1)  written notice to the inmate that prison officials are considering classifying him as a sex offender and/or placing him in a sex offender treatment program;

(2)  a hearing, held sufficiently after the notice to permit him to prepare, which includes: disclosure of the evidence the officials would rely upon for the classification, and an opportunity for him to be heard in person and to present documentary evidence;

(3)  an opportunity to present witness testimony and to confront and cross-examine witnesses called by the officials, except upon a finding, not arbitrarily

18

made, of good cause for not permitting such presentation, confrontation, or cross-examination;

(4) administration of the hearing by an independent decisionmaker;

(5) rendering of a written statement by the decisionmaker as to the evidence relied on and the reasons for the classification; and

(6) effective and timely notice of all the foregoing rights.

e.      Preliminarily and permanently enjoin Defendants Egbuchulam, Arkesteyn, Stevenson and Foster from enforcing their unlawful policy of classifying inmates who have never been convicted of a sex crime as sex offenders and by placing them within sex offender therapy programs without any additional adequate procedural protections that this Court deems just and proper;

f.      Require Defendants Egbuchulam, Arkesteyn, Stevenson and Foster to remove and expunge Plaintiff's current classification in all MDOC paperwork, files and computer systems;

g.      Require Defendants Egbuchulam, Arkesteyn, Stevenson and Foster to provide Plaintiff an expeditious re-classification hearing;

h.      Require Defendants Shipman, Jennings, Warfield and King to remove and expunge all Parole Board paperwork, files and computer entries that mention or rely upon the existing -5 mental health score used in Defendants' Parole Board's Scoresheet;

i.      Require Defendants Shipman, Jennings, Warfield and King to provide Plaintiff an expeditious Parole Board rehearing wherein Defendants will be enjoined from using Plaintiff's current sex offender classification (which was formulated without due process of law), his existing -5 mental health score or Plaintiff's past refusals to participate sex offender therapy programming as a basis to evaluate his current eligibility for parole;

j.      Award Plaintiff damages, including exemplary and punitive damages against Defendants Egbuchulam, Arkesteyn, Foster and Brown-Ward;

k.      Award reasonable costs and attorneys' fees; and

l.      Such other relief as is just and appropriate.


Dated:  October 12, 2021                    Respectfully submitted:

                                            /s/ Frank J. Lawrence (DC# 1048420)
                                            Attorney for Plaintiff Willie Harper
                                            941 Westview Road
                                            Bloomfield Hills, MI  48304
                                            (248) 722-2560
                                            flawrence1@hotmail.com

20

## VERIFICATION OF SECOND AMENDED VERIFIED COMPLAINT
## BY WILLIE HARPER

I verify under penalty of perjury that the foregoing is true and correct.

Executed on: <u>October 11, 2021</u>

Willie Harper